Robert GRUBER, et al., Plaintiffs,

v.

**HUBBARD BERT KARLE WEBER, INC., et al., Defendants.**

Civ. A. Nos. 85–63 Erie, 85–130 Erie, 86–276 Erie to 86–279 Erie, 87–69 Erie, 87–70 Erie, 87–80 Erie to 87–83 Erie, 87–151 Erie to 87–160 Erie, 87–190 Erie to 87–198 Erie, 87–213 Erie, 87–250 Erie, 87–253 Erie to 87–281 Erie.

United States District Court,
W.D. Pennsylvania.

Nov. 18, 1987.

282

Harry D. Martin, Joseph T. Messina, Ted J. Padden, Carney & Good, Wm. Patrick Delaney, Thomas M. Lent, Eugene J. Brew, McClure, Miller & White, Colleen C. McCarthy, McCarthy & Martone, Erie, Pa., David H. Patterson, Louis C. Long, Meyer Darragh Buckler Bebenek & Eck, Pittsburgh, Pa., for plaintiffs.

David L. McClenahan, Kirkpatrick & Lockhart, Pittsburgh, Pa., Quinn, Gent, Buseck & Leemhuis, Craig A. Markham, Erie, Pa., Michael R. Smaltz, Northwestern Legal Services, Franklin, Pa., Gene P. Placidi,

Michael S. Jan Janin, Thomas S. Talarico, Plate, Shapira, Hutzelman, Berlin, May, Walsh & Brabender, Erie, Pa., for defendants.

James D. Morton, Buchanan & Ingersoll, Pittsburgh, Pa., and T. Warren Jones, Marcie Haller, Erie, Pa., for defendants Gordon, McClure, Maxwell and Mahl.

Edwin Smith and Theodore B. Ely, Erie, Pa., for Hammot Medical Center.

## OPINION

GERALD J. WEBER, District Judge.

In November 1981, the Lake Erie Employers' Association (LEEA) was created as a non-profit corporation, offering employee health benefit plans to employers in Pennsylvania and Ohio. In its short life it had as members about 500 employers covering approximately 6000 employees.

From its inception, LEEA's plans were administered by Hubbard Bert Karle Weber, Inc. (HBKW), an insurance agency. LEEA was governed by a Board of Directors and many of HBKW's principals served as directors and/or officers of LEEA. In February 1985, after little more than 3 years of operation, LEEA was forced into bankruptcy when its assets failed to cover outstanding obligations for benefits under the plan.[1]

These several suits were filed under ERISA, 29 U.S.C. §§ 1132 et seq., alleging that HBKW and LEEA's various officers and directors breached their fiduciary obligations in numerous respects, thereby causing LEEA's insolvency.[2] We have certified 2 classes of plaintiffs:

1) Employers who were members of LEEA and have employees or their dependents who have incurred medical bills not paid by LEEA.

2) All employees and their dependents who were beneficiaries of the LEEA

---

1. The Bankruptcy petition was later dismissed (Bankruptcy No. 85–60 Erie (W.D.Pa., 9/17/86)) but the plans have been terminated.

2. Some of the individual defendants may not have been affiliated with HBKW, but were solely directors or officers of LEEA. However, for the sake of brevity and convenience we will in this opinion include all individual defendants in the shorthand designation HBKW unless otherwise noted.

plans and who have incurred medical bills not paid by LEEA.

The relief which plaintiffs seek is simple. Because HBKW allegedly caused LEEA's insolvency, leaving beneficiaries' medical bills unpaid, plaintiffs seek compensation in the amount of the unpaid benefits, plus attorneys' fees and costs. It is this claim of relief which presents the salient issue here.

### 1. HBKW's MOTION FOR SUMMARY JUDGMENT

Defendant HBKW and the individual defendants have moved for summary judgment on the premise that ERISA does not permit a suit by the beneficiaries of a plan against plan administrators for compensatory damages. Rather defendants argue, beneficiaries may only recover for the benefit of the plan which in the present case is defunct.

The Act in Section 502, 29 U.S.C. § 1132, describes the forms of civil action permitted to enforce the Act, including two relevant in this case:

(a) Persons empowered to bring a civil action.

A civil action may be brought—

1.) by a participant or beneficiary—
A.) ...
B.) To recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
2.) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title.

We first examine the § 502(a)(1) cause of action. Following *McMahon v. McDowell*, 794 F.2d 100, (3d Cir.1986), we conclude that the claims asserted here cannot be classified as § 502(a)(1) claims. Such claims are "personal in nature", seeking to define a particular individual's rights under the plan. *Id.*, at 109; *Livolsi v. R.A.M. Construction Company*, 728 F.2d 600 (3d Cir.1984). In this suit there does not appear to be any dispute about any individual's entitlement to payment by LEEA. The definition of the plaintiff-class would eliminate persons not entitled to benefits. The present case transcends the individual claims and concerns broader questions of the fundamental administration of the plans.

The second claim under Section 502(a)(2), is specifically conditioned by Section 409, 29 U.S.C. § 1109:

Liability for breach of fiduciary duty
(a) any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

Defendants contend that this provision provides only for recovery *by or for the plan* and forecloses plaintiffs' claims of compensation for their own individual losses.

Defendants rely heavily on *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Defendants argue that the Court there held that a plaintiff could not recover personal damages from a fiduciary of the plan. A review of the case reveals considerably less support than defendants claim.

First of all, the issue presented in *Massachusetts Mutual* was very narrow.[3] The plaintiff's claim was for *extra-contractual* damages, i.e. compensatory and punitive damages for exacerbation of psychological injuries. Plaintiff did not sue for benefits

---

**3.** Counsel's quibbling over the effect of the concurring opinion is so much wasted breath. The Court carefully and plainly defined the narrow scope of its holding in the first and last sentences of the majority opinion.

under the plan. Indeed, all her medical bills were paid. She did not allege mismanagement affecting the entire plan, but improper or untimely processing of her individual claims. We do agree however that *Massachusetts Mutual* states the broader principle that Section 502(a)(2) and Section 409 permit a beneficiary to sue the administrator only to recover damages which will inure to the benefit of the plan as a whole. 473 U.S. at 140, 105 S.Ct. at 3089.

It is the defendants' contention then that because plaintiffs' claim as damages their own unpaid medical bills that their claims are for personal compensation and not for the benefit of the plan as a whole. This strikes us as a semantic exercise rather than a practical distinction and we reject it.

Plaintiffs allege that defendants caused LEEA to become insolvent. Once insolvent LEEA was unable to satisfy its obligations under the benefit plans, i.e. the medical bills incurred by beneficiaries. The plan's loss then is the same relief sought by the plaintiff classes—the payment of LEEA's outstanding obligations for the beneficiaries' medical bills.

The unspoken portion of defendants' equation is the fact that LEEA is defunct.[4] How can plaintiffs claim relief to benefit the plan as a whole if the plan no longer exists?

To deny plaintiffs relief on this basis would reward defendants for the thoroughness of their alleged mismanagement. If defendants wound the victim they may be sued, but kill it and the claim dies with it. Such a construction is absurd and unsupportable.

■ In the absence of a functioning plan, it is the class of beneficiaries and their rights under this plan which represent the interests of the plan for the purposes of Section 409. The plan's foremost interest as a non-profit trust is to satisfy the obligation to its beneficiaries. Because the present case presents not merely the claim of an individual to the exclusion of others, but the collective claims of the trust's beneficiaries, the relief sought would inure to the benefit of the plan as a whole, even though no plan technically exists.

Support is found in *McMahon v. McDowell*, 794 F.2d 100 (3d Cir.1986). There employee pension plans were terminated and plaintiff workers sued the administrators alleging breach of fiduciary duties. Plaintiffs sought to recover unpaid pension plan contributions from the administrators. While holding that plaintiffs could not recover directly for benefits due them, the Court acknowledged that plaintiffs could recover damages for the plan which, though terminated, was being administered by the Pension Benefit Guaranty Corporation as successor trustee. In the present case plaintiffs do not appear to enjoy the fortuity of a successor trustee, but where the claims of the beneficiary and member classes are so consistent with the interests of the "plan", the purpose and intent of Section 409 and the statute as a whole are satisfied.

■ We conclude therefore that plaintiffs are able to maintain a claim for damages under Section 502(a)(2) and Section 409 of ERISA for the breach of the administrators' fiduciary duties. The motions of HBKW and individual defendants for summary judgment on this ground will therefore be denied.

## 2. HAMOT MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT

Hamot Medical Center provided medical care to numerous persons covered by the LEEA plans. When LEEA went under, Hamot looked to the individual patients and their spouses (or in the case of a minor patient, the parents) for payment.[5] Ultimately Hamot filed several suits in the Court of Common Pleas of Erie County against these persons.

---

4. The technical legal aspects of LEEA's demise are not apparent on this record, but it appears that LEEA no longer exists as a legal entity. If the court labors under a misimpression, counsel may advise.

5. We will refer to these various individual defendants, whether patients, spouses or parents, in the collective as patient-defendants.

The individual patient-defendants, all represented by the same law firm, filed identical Answers and joined HBKW and its principals as additional defendants, repeating the allegations of the class action suits. HBKW then removed these individual suits to Federal Court where we consolidated them with the class action suits.

Hamot has now filed a motion for summary judgment on four of these cases to establish the liability of the individual patient-defendants (and their spouses or parents) for the medical bills they incurred.[6] These four cases are representative of the dozens of such cases which have since been removed to this court and consolidated in this action. Although details differ from case to case, the essential facts are identical in all. The patient entered the hospital for medical treatment, presented his LEEA insurance card and the hospital billed LEEA. When LEEA failed to pay, the hospital demanded payment from the patient.

There is no question that the failure of LEEA cost individuals one of the most important benefits of their jobs—the security of health insurance for them and their families. There is also no question that the unexpected obligation to pay such bills will present a serious hardship to these families, the cost of most medical care being out of reach of most average households.[7] While we are not ignorant of the impact on these families, the question presented by Hamot's suits is whether these patients are legally responsible for the cost of the medical services rendered to them. We must conclude that the defenses raised by the patient-defendants are not supported in law

or fact and therefore summary judgment will be entered in favor of Hamot against the patient-defendants.

■ Patient-defendants assert two defenses to liability on Hamot's claims: a) accord and satisfaction, b) estoppel.[8] Defendants' reliance on accord and satisfaction is clearly unavailing here. The doctrine requires that payment be offered and accepted as settlement in full of a disputed debt. The mere presentation of an insurance card cannot be construed as a payment and patient-defendants cite no authority in support of their premise that it is. Further, no dispute over the amount of the bill arose until Hamot filed suit, a considerable time *after* the alleged payment.

■ Defendants' estoppel theory is that upon acceptance of the health insurance card from the patient, Hamot impliedly promised to look only to the insurer and to excuse the patient and his family from any obligation. Defendants fail to present any support for this theory, either in evidentiary material or in pertinent legal authority. Moreover, the documents signed by patients upon admission discount this defense. Two of these four patients expressly agreed to the obligation for their medical bills,[9] and all patients signed a consent form indicating at least some financial obligation.[10] But most importantly the mere fact that Hamot undertook to bill the patient's insurance carrier does not extinguish the patient's underlying obligation for the cost of that care, whether that obligation be characterized as contractual or quantum meruit. Defendants have produced no evidence to support their defenses

6. *Artello*, 86–276E; *Fiero*, 86–277E; *Keller*, 86–278E; *Zielinski*, 86–279E.

7. There is some prospect that the beneficiaries' employers may ultimately bear some portion of these bills. In this action, HBKW has asserted a claim against all employer-members of the LEEA plan, demanding that they contribute sufficient premiums to satisfy the plan's obligations to beneficiaries. We certified a class of defendant-employers, but no motion on this aspect of the case is pending at this time. We also suspect that collective bargaining agreements may require some employers to cover these bills, but this issue is not within our purview.

8. There appears to be no dispute that under Pennsylvania common law, if the patient retains the obligation for a necessity such as medical care, the obligation extends to the spouse, or in the case of a minor, to the parents.

9. *Keller*, 86–278E; *Zielinski*, 86–279E.

10. Defendants' argument that they were all so distraught as to not understand the contents of the form is unsupported by evidentiary material, but in any event would not prevent recovery by Hamot on an implied contract or quantum meruit theory.

of estoppel or accord and satisfaction, the mere belief or assumption that Hamot would look to LEEA alone being insufficient.

 Patient-defendants also charge Hamot with violating the Pa. Unfair Trade Practices Act, 73 P.S. § 201–1 et seq. Defendants allege that Hamot engaged in price fixing with Blue Cross of Western Pennsylvania while charging LEEA a higher price, thereby placing LEEA at a competitive disadvantage. First of all, we fail to see what benefit Hamot could obtain by putting LEEA out of business. But in any event, the mere fact that Hamot negotiated different agreements with different insurers does not amount to price fixing. At best, it shows that LEEA made a bad deal, and that alone is not actionable.

Summary judgment in favor of Hamot is also appropriate on the amount of the medical bills. Hamot has recited the amounts due and produced itemized bills for each patient's care. Defendants contend that the charges are unreasonable and higher than is customary in the industry, but defendants have not presented any evidence whatsoever to support this position. Of course a party may not rest on its pleadings when confronted by a summary judgment motion, and defendants having failed to present a material issue of fact supported by evidentiary material, summary judgment must be granted in favor of Hamot in the amount claimed in each individual case.

 The claims by Hamot against the individual patient-defendants in these four cases having been resolved on summary judgment, all that remains in those cases are the claims of the patient-defendants against HBKW. Those claims as pled in each individual case are identical to the claims asserted in the class action suit at Civil Action No. 85–63 Erie. All that remains of these suits involving the individual patients are claims subsumed within the class action suit. The interests of the indi-

viduals being consonant with the interests of the class, there is no purpose in continuing duplicative individual suits. The actions by the individual patient-defendants against HBKW and others will therefore be dismissed.

We deal here with only four individual cases filed by Hamot.[11] However, these have been followed by 59 similar cases.[12] In each the hospital sues for payment of medical bills which LEEA could not pay. Each defendant has filed an identical Answer raising the same defenses disposed of here. Each defendant has filed the same Third–Party Complaint joining HBKW on the same claims. As noted above the four cases before us today are representative of this burgeoning list of related cases. Our review of those cases indicates that we have resolved in the present four cases all issues raised in the subsequent cases.

Whether it be termed collateral estoppel or stare decisis it is our intention to resolve these remaining cases in a manner consistent with the rulings made in this Opinion. We will therefore require the plaintiff-hospitals to file an omnibus motion for summary judgment on all pending cases against individual patient-defendants. Plaintiffs shall examine each case to determine which if any present a unique issue not previously addressed in this case. Defendants shall then file an omnibus response, without rearguing the rulings of law made herein, but identifying any cases with unique circumstances or issues.

By this means we hope to resolve all outstanding individual cases in an expeditious fashion, and thus permit court and counsel to focus on the class action cases.

### 3. OTHER MATTERS

Also pending at this time is HBKW's motion to strike plaintiffs' jury trial demand. We will take this matter under advisement until the Pretrial Conference.

Also at this time we will reopen discovery for a short period to permit the

---

**11.** Note 5, supra.

**12.** Most of these cases were filed by Hamot. However, St. Vincent's Health Center has now filed several suits of the same genre. The discussion and directions which follow apply equally to Hamot and St. Vincent.

parties in the class action claims the opportunity to complete any remaining discovery. A schedule for the filing of Pretrial Narratives will be included in our order.

## ORDER

In accord with the accompanying Opinion it is hereby ORDERED:

a) All actions listed in the above caption are CONSOLIDATED at Civil Action No. 85–63E. Omnibus motions or pleadings shall be filed at CA 85–63E. Any matters concerning a particular case shall be filed at that particular civil action number.

b) The motion for summary judgment filed by HBKW and individual defendants is DENIED.

c) Hamot's motion for summary judgment against patient-defendants in 86–276E, 86–277E, 86–278E, and 86–279E is GRANTED. Plaintiff shall submit an order in each case for the entry of judgment in the amount claimed.

d) The claims of the patient-defendants in 86–276E, 86–277E, 86–278E and 86–279E against HBKW and individual defendants being subsumed within the claims in the class actions at 85–63E, these cases are DISMISSED without prejudice. The Clerk is DIRECTED to mark 86–276E, 86–277E, 86–278E, and 86–279E CLOSED.

e) Plaintiff hospitals shall file an omnibus motion for summary judgment on all claims against patient-defendants *on or before December 7, 1987.* Plaintiffs shall identify any cases which present different issues than those resolved in the accompanying Opinion.

f) Patient-defendants shall file an omnibus response to plaintiff-hospitals' motion *on or before December 28, 1987.* Defendants shall identify those cases which present different issues than those resolved in the accompanying Opinion.

g) In support of the motion, and in response, the parties shall file such briefs or evidentiary material as are necessary without duplicating any material previously submitted.

h) Discovery on the claims of the plaintiff-classes is REOPENED, *to close on January 31, 1988.* Plaintiffs' Pretrial Narrative shall be filed on or before *February 15, 1988.* The Pretrial Narrative of Defendant HBKW and the individual defendants shall be filed *on or before February 28, 1988.* A Pretrial Conference will be scheduled thereafter.