**Fred W. EVERSON, Plaintiff,**

v.

**BLUE CROSS AND BLUE SHIELD OF OHIO et al., Defendants.**

No. 93CV7534.

United States District Court,
N.D. Ohio,
Western Division.

June 15, 1994.

suant to 29 U.S.C. §§ 1109(a) and 1106(b), and allegations of a violation of the Racketeer Influenced Corrupt Organizations Act (RICO). These claims are based on defendant's alleged practice of negotiating discounts with health care providers and failing to pass such discounts on to group health care plan participants. As a result, participants are allegedly obligated to make co-payments in excess of that stated in the insurance contract.

Defendant has moved to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6). In *Allard v. Weitzman*, 991 F.2d 1236 (6th Cir.1993), the Sixth Circuit sets forth the standard for considering a Rule 12(b)(6) motion:

[The] Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). A complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir.1990) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). A judge may not grant a Fed.R.Civ.P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. *Id.* While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" *Id.* (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985)).

Plaintiffs' first cause of action is a claim for benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Section 1132(a)(1)(B) provides that "[a] civil action may be brought—(1) by a participant or ben-

Dennis E. Murray, Sr., Kirk J. Delli Bovi, Murray & Murray, Sandusky, OH, for Fred W. Everson, Joseph F. Kreidler.

Marvin L. Karp, Ulmer & Berne, Cleveland, OH, for Jeffrey McConocha, Lawrence C. Engel, ISDN Technologies, Inc., Mathews Ford Sandusky, Inc.

Paul S. Lefkowitz, Climaco, Climaco, Seminatore, Lefkowitz & Garofoli, Cleveland, OH, Fritz Byers, Troy L. Moore, Scott, Ballinger & Moore, Toledo, OH, for Blue Cross & Blue Shield of Ohio.

## MEMORANDUM & ORDER

CARR, District Judge.

This action is before the court on defendant Blue Cross and Blue Shield of Ohio's (BCBSO) motion to dismiss the amended complaint, plaintiffs' opposition, defendant's reply, and plaintiffs' response. Also before the Court is defendant's motion for oral argument and plaintiff's opposition. Jurisdiction is based on 29 U.S.C. § 1132(e) and (f).

This action is brought under the Employee Retirement Income Security Act of 1974 as amended (ERISA) and 18 U.S.C. § 1962. Plaintiffs' complaint includes a claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), allegations of a breach of fiduciary duty pur-

eficiary ... (B) to recover benefits due to him under the terms of his plan...." Plaintiffs' complaint alleges, inter alia, that group health care plan participants have been obligated to make co-payments in excess of the fixed percentage set forth in the group plan. Plaintiffs claim that the excess payments are the result of the allegedly undisclosed practice of defendant negotiating discounts with health care providers and failing to pass a proportionate share of such discounts on to its insureds. As a result, plaintiffs allege that defendant actually pays a percentage of the health care providers' charges which is less than that specified by the terms of the plan. The insureds' portion, on the other hand, is not discounted, but is still based on the total charges. Thus, the copayment paid by the insured is greater than that specified by the terms of the plan.

Defendant argues that plaintiffs' claim for benefits must be dismissed because, as a matter of law, their group plan does not entitle them to the benefit of any discounts that defendant negotiates and receives. Defendant argues that plan documents clearly reveal that negotiated discounts are for the benefit of BCBSO only. It bases its argument on two theories, one applicable to plaintiff Fred Everson, and the other to plaintiffs Jeffrey McConocha and Lawrence Engel.

■ The Court must look to the plan documents applicable to each plaintiff to determine what benefits are due under the terms of each plan. As to plaintiff Everson, BCBSO submits plaintiff's group insurance contract and his subscriber certificate as the applicable plan documents.[1] It argues that these two documents should be viewed as a single, integrated document. Defendant contends that the group contract clearly discloses BCBSO's discounts, that such discounts are for the sole benefit of BCBSO, and that co-payments are not calculated upon any such discounts. Thus, BCBSO argues

that the contract language defeats any claim that Everson has for benefits.

Plaintiffs, on the other hand, argue that the Subscriber Certificates (hereinafter Certificates) which were received by each employee under the plan, and which were drafted by defendant, are ERISA summary plan descriptions. Plaintiffs contend that to the extent there are inconsistencies between the language in the Certificates and the employer's group contract, the language in the Certificate controls. Indeed, the Sixth Circuit has determined that statements in the summary plan description control where those statements conflict with the plan itself. *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir.1988); *Flacche v. Sun Life Assurance Co. of Canada*, 958 F.2d 730, 736 (6th Cir.1992). However, for the following reason, this Court concludes that the Everson Certificate is not an ERISA summary plan description.

■ ERISA requires the plan administrator to provide a summary of the plan to all participants and beneficiaries. 29 U.S.C. §§ 1021(a), 1024(b)(1). By definition, a summary of the plan does not reproduce, word for word, each term of the plan itself. In this case the plan documents consist of the group contract and the Subscriber Certificate. The Certificate sets forth, inter alia, the schedule of benefits, exclusions from coverage, copayment limits, deductibles, how to make claims and how to appeal claims. The group contract includes none of these terms; rather, it incorporates the Subscriber Certificate into the contract by reference. *See* Exhibit C, Group Contract § 3.1. Thus, the Certificate is itself a part of the plan containing terms found in no other plan document. Because the plan and a *summary* of the plan require two distinct documents, the Subscriber Certificate, in this case, cannot also be a summary plan description. *See Hansen v. Continental Insurance Co.*, 940 F.2d 971 (5th Cir.1991).

1. The Court notes that plaintiffs did not attach the applicable group plans or subscriber certificates to their complaint. Rather, these documents were submitted to the Court by defendant in its motion to dismiss. However, plaintiffs' complaint repeatedly refers to the plans and policies with defendant, and the interpretation of these documents are central to plaintiffs' complaint. As such, the group plan and certificates are a part of the pleadings, and the Court may properly consider the documents in this 12(b)(6) motion. *See Teagardener v. Republic–Franklin Inc. Pension Plan*, 909 F.2d 947, 949 (6th Cir. 1990).

■ In addition, any obligation to provide a summary plan description to participants and beneficiaries as required under ERISA belongs to the plan administrator. *See* 29 U.S.C. §§ 1021(a), 1024(b)(1). ERISA defines plan administrator as the person designated by the terms of the plan documents or, if not so designated, the plan sponsor. *Id.* at § 1002(16). Neither Everson's Certificate nor the group contract identify the plan administrator. Therefore, the plan sponsor is the administrator in this case. "Plan sponsor" is defined as "the employer in the case of an employee benefit plan established or maintained by a single employer." *Id.* Thus, Everson's employer, Acme Printing Company, not BCBSO, was obligated to furnish a summary plan description in compliance with ERISA. Because the Court concludes that the Certificate is not a summary plan description, it must consider the group contract and the Certificate as an integrated document in determining what benefits are due Everson under the terms of his plan. Under ERISA, the construction of the contract is governed by principles of federal law. *Turner v. Safeco Life Ins. Co.,* 17 F.3d 141, 145 1994 U.S.App. LEXIS 2686, at *12 (6th Cir.1994) citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56–57, 107 S.Ct. 1549, 1557–1558, 95 L.Ed.2d 39 (1987). A basic principle of contract construction is that "each provision of a contract should be interpreted as part of an integrated whole, to the end that *all* of the provisions may be given effect if possible." *Musto v. American General Corp.,* 861 F.2d 897, 906 (6th Cir.1988). "Where ambiguities exist, the court may look to other words and phrases in the ... agreement for guidance." *UAW v. Yard–Man, Inc.,* 716 F.2d 1476, 1480 (6th Cir.1983).

■ In this case, the Certificate sets forth the benefits available to Everson and that such benefits are subject to the terms and conditions of the group contract. These benefits include, inter alia, payment of a fixed percentage of the health care provider's reasonable charge. The "provider's reasonable charge" is defined in the Certificate as: "the charge that we determine is reasonable for Covered Services provided to you. A Con-

tracting Provider's Reasonable Charge is *established by the agreement between us and the provider.*" Exhibit B, Subscriber Certificate at p. 40 (emphasis added).

In a section entitled "How Claims Are Paid," the Certificate states that the "*amount* of copayment ... [is] specified in the Schedule of Benefits...." *Id.* at 31 (emphasis added). However, the Schedule of Benefits states only the percentage of charges which BCBSO will pay. When these provisions are read in conjunction with each other, it is not unreasonable to conclude that if BCBSO will pay eighty percent of the provider's reasonable charge, then the insured's copayment will be twenty percent of that same charge. Nor is it unreasonable to conclude that the agreement referred to in the definition of the "provider's reasonable charge" includes the discount agreements at issue. Under this interpretation, the copayment would be based upon charges after the discount.

Defendant, on the other hand, argues that "copayment," as referred to in the Certificate, can only be interpreted as being based upon the provider's actual bill and that the "provider's reasonable charge" does not include any agreed upon discounts. Defendant makes this argument despite the fact that the Certificate contains no language informing the insured of discounts BCBSO may negotiate nor any explanation that benefits and copayments will be based on charges without regard to any discounts. This Court finds that the Certificate read alone is fairly susceptible to both plaintiffs' and defendant's interpretations.

However, the terms of the group contract must also be given effect if possible. The group contract states as follows:

Some of the Plan's contracts with Providers allow discounts, allowances, incentives, adjustments and settlements. These amounts are for the sole benefit of the Plan [2] and the Plan will retain any payments resulting therefrom. All claims submitted to the Plan will have copayment and deductible amounts calculated according to the Provider's charges for Covered

---

2. The "Plan" is identified in the group contract as Blue Cross and Blue Shield of Ohio.

Services *without regard to the Plan's discounts, allowances or incentives.*

Exhibit C, Group Contract at § 9.5 (emphasis added).

This very specific language makes clear that the discount agreements are not the agreements referred to in the definition of the provider's reasonable charge. Accordingly, any ambiguity in the Certificate is resolved. Therefore, BCBSO is not required, under the terms of the Everson plan, to pass these discounts on to participants. As such, Everson has failed to state a claim for benefits under § 1132.

■ Because the basic premise of plaintiff Everson's breach of fiduciary duty claim is that BCBSO has a duty under the terms of the plan to pass discounts on to participants, this cause of action fails to state a claim. In addition, because the so called "secret" discounts are the basis of plaintiff's claim of the RICO predicate acts of mail and wire fraud and conversion of employee welfare benefit plan assets, plaintiff Everson's RICO claim fails to withstand the motion to dismiss. For the same reasons, plaintiff Everson's remaining counts for declaratory judgment, accounting and injunctive relief shall likewise be dismissed.

BCBSO also argues that plaintiffs McConocha and Engel have failed to state a claim for benefits upon which relief may be granted. It again contends that the terms of the plan define plaintiffs' benefits and that the plan documents reveal no legal entitlement to the recovery plaintiffs seek. Interestingly, the only plan document defendant asks the Court to consider with respect to these plaintiffs is a Certificate containing virtually identical language regarding copayments and payment of benefits as the Everson Certificate discussed above. *See* Exhibit D at p. 1–5, 33, 44. However, no group contract has been submitted. Thus, the McConocha and Engel plan document does not contain the specific language regarding discount agreements used to clarify the language in the Everson Certificate.

■ Having already determined that the language in the Certificate is fairly susceptible to both plaintiffs' and defendant's interpretations, the Court must decide whether or not the copayment and the provider's reasonable charge are based upon the provider's charge without regard to the discounts. "Under federal common law, the court resolves ambiguity through traditional methods of contract interpretation." *Tolley v. Commercial Life Ins. Co.,* 1993 WL 524284 at *6, 1993 U.S.App. LEXIS 33508, at *6 (6th Cir. Dec. 17, 1993). The rule of contra proferentum is one such method that is followed in every state as well as the District of Columbia. *Id.* at *7. Although the Sixth Circuit has concluded that any state rule of construction is preempted and not "saved" under ERISA, it stated that the rule of contra proferentum might be applicable as a "matter of federal law pursuant to the Congressional directive to form a 'federal common law of rights and obligations under ERISA....'" *Id.* at *6–7 (finding it unnecessary to decide whether to apply the rule as no ambiguity was found).

The Ninth Circuit has described the rule as follows:

[I]f, after applying the normal principles of contractual construction, 'the insurance contract is fairly susceptible of two different interpretations, ... the interpretation that is most favorable to the insured will be adopted. The rule is based upon the principle of contract construction that when one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any ambiguity will be resolved against the drafter.'

*Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534 (9th Cir.1990) (quoting A. Windt, *Insurance Claims and Disputes* § 6.02, at 286 (2d ed. 1988)). The Second Circuit reasoned, in applying the rule of contra proferentum to an ERISA-governed employee health insurance plan,

To ignore the effect of this rule 'would require us to ... afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted,' a result that would be at odds with the congressional purposes of promoting the interests of employees and beneficiaries

and protecting contractually defined benefits....

*Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98, 107 (2d Cir. 1991) quoted with approval in *Phillips v. Lincoln National Life Ins. Co.*, 978 F.2d 302 (7th Cir.1992); *see also Kunin*, 910 F.2d at 540; *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249 (3rd Cir.1993). This Court agrees that it is appropriate to adopt the rule as a matter of federal common law.

Given the ambiguity in the meaning of "copayment" and "provider's reasonable charge," such language, as drafted by the insurer, will be construed in favor of the insured. Thus, the Certificate requires, as plaintiffs argue, that copayments and benefits payable under plaintiffs McConocha and Engel's plan be based on charges after taking into consideration any discounts BCBSO has received pursuant to an agreement with the provider. As such, plaintiffs McConocha and Engel have adequately alleged a claim for benefits under § 1132.

Plaintiffs' second cause of action is a breach of fiduciary duty claim brought under 29 U.S.C. § 1109(a). Plaintiffs' amended complaint alleges that BCBSO is a fiduciary under ERISA. ERISA provides that:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

■ When an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny claims, the company has the requisite discretionary authority to qualify as an ERISA fiduciary. *Libbey–Owens–Ford Co. v. Blue Cross and Blue Shield Mut.*, 982 F.2d 1031 (6th Cir.1993); *Tregoning v. American Community Mutual Ins. Co.*, 12 F.3d 79, 82–83, 1993 U.S.App. LEXIS 32751, at *8–9 (6th Cir.1993). In this case, BCBSO has such discretionary authority regarding claims and, therefore, is a fiduciary under ERISA. Furthermore, in negotiating with providers regarding the charges that it will pay under the terms of the Plan, BCBSO exercises the discretionary control and authority as is contemplated in § 1002(21)(A)(i) and (iii).

Plaintiffs allege that BCBSO has breached its fiduciary duties under ERISA. They allege that defendant's secret discount scheme negotiated with health care providers, which causes insureds to overpay their contractual share of covered health care expenses, is in violation of fiduciary duties set forth in §§ 1104 and 1106.

BCBSO does not contest these allegations. Rather, its motion to dismiss is based upon three arguments: (1) that plaintiffs Everson, McConocha, and Engel, as plan participants or beneficiaries, are not proper plaintiffs in an action for breach of fiduciary duty; (2) that plaintiffs Everson, McConocha, and Engel seek only monetary relief for themselves, which is not permitted by ERISA; and (3) that plaintiff ISDN Technologies (ISDN), as plan administrator, has failed to allege that the plan has sustained any loss. Since it was determined above that Everson's claim of breach of fiduciary duty must be dismissed, the Court will discuss this claim with respect to McConocha and Engel only.

■ First, defendant erroneously argues that ERISA plan participants have no cause of action for breach of fiduciary duty. Section 1132(a)(2) clearly states that "[a] civil action may be brought ... by the Secretary or by a participant, beneficiary, or fiduciary for appropriate relief under Section 1109 of this title...." *See also Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985).

■ Next, BCBSO argues that McConocha and Engel, as plan participants, request only monetary relief and that such relief is not permitted under § 1109. This Court agrees that monetary relief is not available under § 1109. Guided by the Supreme Court in *Russell*, the Sixth Circuit has repeatedly found that § 1109 authorizes relief only to a *plan*, not to participants or beneficiaries. *See Richards v. General Motors*

*Corp.*, 991 F.2d 1227, 1231 (6th Cir.1993); *Farrell v. Automobile Club of Michigan*, 870 F.2d 1129 (6th Cir.1989); *Bryant v. International Fruit Product Company, Inc.*, 886 F.2d 132, 135 (6th Cir.1989); *Tregoning v. American Community Mutual Ins. Co.*, 12 F.3d 79 (6th Cir.1993).

Plaintiffs argue, however, that the monetary relief sought in this case inures to the benefit of the entire plan because the action is brought on behalf of *all* plan participants and beneficiaries, thus complying with the above stated mandate. In support of this argument, plaintiffs cite *Gruber v. Hubbard Bert Karle Weber, Inc.*, 675 F.Supp. 281 (W.D.Pa.1987). Although this argument has some appeal where a plan consists only of an insurance policy, this Court is not so persuaded. First, this Court finds *Gruber* limited to its facts and the court's specific holding. The *Gruber* court held that "in the *absence of a functioning plan,* it is the class of beneficiaries and their rights under this plan which represent the interests of the plan for the purposes of Section [1109]." *Id.* at 284 (emphasis added). In addition, it is not clear that a monetary award to plan participants who have allegedly overpaid their contractual share of health care costs would benefit *all* plan participants and beneficiaries. Rather, it would benefit only those who have incurred some health care expenses.

■ Although plaintiffs may not obtain individual monetary relief, they argue that they have also requested equitable relief such that their claim is one upon which relief may be granted. I agree. Section 1109(a) provides:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, *and shall be subject to such other equitable or remedial relief as the court may deem appropriate*

Section 1109 must be considered in conjunction with the *Russell* mandate that relief must be for the benefit of the plan. Thus, if the equitable relief sought will benefit the plan as a whole, plaintiffs' claim will survive a motion to dismiss. Plaintiffs have requested relief in the form of a declaratory judgment that BCBSO's policies and plans require it "to pay specified percentages of the providers' non-discounted charges, with any negotiated discounts enuring only to the benefit of the class, or alternatively, with any negotiated discounts enuring to the equal benefit of BCBSO . . . and the class." Amended Complaint, prayer at ¶ 3. In short, plaintiffs are asking the Court to declare that the terms of the plan itself require BCBSO to deal with negotiated discounts in a manner other than it has in the past.

The Supreme Court, in discussing § 1109, stated that "a fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan." *Russell, supra,* 473 U.S. at 142, 105 S.Ct. at 3090. Here, the plan's only asset consists of an insurance policy. Plaintiffs allege that defendant is profiting from this asset through undisclosed negotiated discounts with health care providers, thereby reducing actual benefits otherwise provided by the policy. I conclude that this can be construed as a "misuse of plan assets" as contemplated by Congress and that the declaratory judgment, as requested by plaintiffs, is an appropriate remedy for maintaining the integrity of the insurance policy and, therefore, the plan itself. To hold otherwise would render § 1109 inapplicable to insurance plans and would allow fiduciaries of such plans to ignore the standards of conduct established by Congress to protect *all* employee benefit plans. *See* 29 U.S.C. § 1001(b).

■ Defendant also argues that plan administrator ISDN Technologies (ISDN) has failed to state a claim for breach of fiduciary duty because it has failed to allege a loss to the plan. However, plaintiffs' amended complaint alleges that plan administrators, in their fiduciary capacities, have not received the benefit of the discounts negotiated and retained by BCBSO. Amended Complaint,

¶ 23, 25. The Court notes that such benefits may be in the form of reduced premiums. As such, ISDN has adequately alleged a loss. Therefore, in light of the foregoing, this Court denies BCBSO's motion to dismiss plaintiffs' breach of fiduciary claim.

■ The third cause of action is a RICO claim pursuant to 18 U.S.C. § 1962(c). Section 1962(c) makes it unlawful

> for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To state a claim under RICO, a plaintiff must allege that defendant participated in the operation or management of an enterprise with which it is associated, *Reves v. Ernst & Young,* —— U.S. ——, ——, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993); *McNew v. People's Bank,* 1993 WL 243772 at *19, 1993 U.S.App. LEXIS 17671, at *19 (6th Cir. July 6, 1993), and that defendant did so through a pattern of racketeering activity.

Defendant argues that plaintiffs' allegations in the amended complaint are deficient in several respects. First, defendant contends the amended complaint fails to allege facts showing BCBSO's participation in the operation and management of the enterprise. Defendant also contends that plaintiffs have failed to adequately allege the RICO predicate acts of racketeering. Finally, defendant argues that plaintiffs' RICO claim is barred by the McCarran–Ferguson Act and that "pattern of racketeering activity" as used in § 1962(c) is unconstitutionally vague.

Defendant's first argument that the complaint fails to allege facts showing BCBSO's participation in the operation and management of the enterprise is not well taken. The amended complaint alleges that "[d]efendants, directly and indirectly, have conducted and participated in the affairs of the enterprise...." Amended Complaint, ¶ 38. The enterprise is alleged to be an association-in-fact of insurance companies entitled to use the service mark "Blue Cross" and whose purpose it is to induce individuals, and/or their employers, to become or remain Blue Cross insureds.

Plaintiffs allege that defendant enters into discount agreements with health care providers, the agreements require the providers to bill certificate holders directly for copayments based upon the undiscounted charges, defendant misled insureds as to the amount of copayments they would be required to make, and the purpose of such activity is to "fraudulently induce persons to become Blue Cross insureds." *Id.* at 37. Plaintiffs' claims sufficiently allege defendant's participation in the operation and management of the enterprise.

Next, the defendant argues that plaintiffs have failed to adequately allege the RICO predicate acts of racketeering. RICO includes within the definition of "racketeering activity" various offenses, including mail fraud, wire fraud, and conversion of assets of an employee welfare benefit fund in violation of 18 U.S.C. § 664. 18 U.S.C. § 1961(1). The amended complaint in this case sets forth all three predicate acts of racketeering activity.

■ To properly set forth the crime of mail or wire fraud, the plaintiff must assert that a scheme or artifice to defraud existed, the misrepresentations or omissions were reasonably calculated to deceive persons of ordinary prudence and comprehension, plaintiffs relied on defendant's false statements of fact, and the United States mails or an interstate telecommunication system was utilized for the purpose of executing the scheme. *Dana Corporation v. Blue Cross and Blue Shield Mut.,* 900 F.2d 882, 885 (6th Cir.1990); *Blount Fin. Services, Inc. v. Walter E. Heller and Co.,* 819 F.2d 151, 152–153 (6th Cir. 1987). In addition, Fed.R.Civ.P. 9(b) requires that fraud, including mail fraud, be pleaded with particularity. *Van Dorn Co. v. Howington,* 623 F.Supp. 1548, 1555 (N.D.Ohio 1985); *Blount Fin. Services, Inc.,* 819 F.2d at 152; *Bender v. Southland Corp.,* 749 F.2d 1205 (6th Cir.1984).

■ Defendant argues that plaintiffs failed to allege reliance on defendant's false statements and that plaintiffs failed to plead mail and wire fraud with the specificity required by Fed.R.Civ.P. 9(b). Although I

conclude that plaintiffs properly alleged reliance, defendant's argument has merit.

The complaint alleges that "money derived from defendant's participation in the 'pattern of racketeering activity' described below was used to disseminate false and/or misleading information concerning the defendant's insurance programs to the plaintiffs through various radio, television, and print advertisements, and through the mails of the United States," Amended Complaint, ¶ 37, and that the "pattern of racketeering activity included ... periodic mailings made to plaintiffs...." *Id.* at ¶ 41. Although the allegations describing the fraudulent scheme itself are stated with great particularity, they fail to mention any use of the mails or wires. The allegations of paragraphs 37 and 41 set forth above,[3] standing alone, are not sufficiently particular to satisfy Rule 9(b). *See Schreiber Distrib. Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393 (9th Cir.1986).

Although plaintiffs have not properly alleged mail or wire fraud, the amended complaint also alleges conversion of employee welfare benefit fund assets in violation of 18 U.S.C. § 664. Section 664 imposes liability on any person who "embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, ... or other assets of any employee welfare benefit plan ... or of any fund connected therewith...." 18 U.S.C. § 664.

Thus, to assert a § 664 violation, plaintiffs must allege not only that defendant has converted money, funds, or other assets, but also that the misappropriated assets belonged to an employee welfare benefit plan or to a "fund connected therewith." *Id.; see United States v. DeLillo,* 421 F.Supp. 1012 (E.D.N.Y.1976). Nowhere in the amended complaint do plaintiffs allege that BCBSO converted assets of an employee welfare benefit plan or that it converted moneys or assets of any fund connected with an employee benefit plan. Nor can plaintiffs make these allegations. An insurance policy is the plan's only asset and plaintiffs do not allege

that defendants converted it. Furthermore, there is no "fund" connected with this employee benefit plan that has been brought to the court's attention.

Although plaintiffs attempt to track the "fund connected therewith" language of § 664, the complaint merely alleges conversion of "monies and assets connected with employee welfare benefit plans in which plaintiffs ... are and were participants." *See* Amended Complaint, ¶ 42. As stated earlier in this opinion, although the standard in ruling on a 12(b)(6) motion is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some legal theory." *Id.* (citation omitted). Plaintiffs did not allege the existence of a fund connected with the employee plan. Other allegations in the complaint assert only that BCBSO failed to pay enough money to health care providers and that, as a result, plaintiffs were required to pay higher copayments than they otherwise should have paid. The only moneys involved were those which belonged to plaintiffs themselves. Although this practice may or may not be a crime, it is not a violation of § 664 upon which a RICO claim can be based.

Defendant also argues that plaintiffs' RICO claim is barred by the McCarran–Ferguson Act. Although plaintiffs' RICO claim may be dismissed for the reasons stated above, resolution of the McCarran–Ferguson argument will determine whether it is dismissed with or without prejudice. Section 1012(b) of the McCarran–Ferguson Act provides:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, ...

---

3. The Court notes that plaintiffs have misnumbered paragraphs of their complaint and, in so doing, repeated numbers 34–38. Paragraph 37 referred to here is paragraph 37 under the third cause of action.

unless such Act specifically relates to the business of insurance.

15 U.S.C. § 1012(b).

■■■ A four part analysis has been developed for the purpose of determining whether the McCarran–Ferguson Act precludes application of a particular federal statute. *See Cochran v. Paco, Inc.,* 606 F.2d 460, 464 (5th Cir.1979) *(citing SEC v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969)). Under this analysis, a federal statute is precluded if (1) the statute does not specifically relate to the business of insurance within the meaning of 15 U.S.C. § 1012(b); (2) the complained of activities constitute the "business of insurance;" (3) the state has enacted laws for the purpose of regulating the complained of activity; and (4) the federal statute would invalidate, impair, or supersede the state law. *Cochran,* 606 F.2d at 464; *First Nat. Bank v. Sedgwick James of Minnesota, Inc.,* 792 F.Supp. 409, 417 (W.D.Pa.1992); *Forsyth v. Humana, Inc.,* 827 F.Supp. 1498, 1520 (D.Nev.1993).

■■■ There is no dispute that RICO does not specifically relate to the business of insurance. Plaintiffs argue, however, that BCBSO's practice of negotiating secret discounts and failing to consider these discounts when calculating insured's copayments does not constitute the business of insurance. Therefore, plaintiff argues that the McCarran–Ferguson Act does not preclude their RICO claim.

The Supreme Court has set forth three criteria to determine whether a particular practice constitutes the business of insurance: "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982); *See Dana Corp. v. Blue Cross and Blue Shield Mut.,* 900 F.2d 882, 888 (6th Cir.1990).

Plaintiffs argue that BCBSO's practice at issue in this case is similar to the practice at issue in *Group Life and Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), in which the Court found that agreements between the health insurer and participating pharmacies did not constitute the business of insurance. However, this Court finds plaintiffs' analogy inapposite.

In *Royal Drug,* nonparticipating pharmacies challenged the insurer's practice of entering into agreements with participating pharmacies in which the price of drugs were set at cost plus $2.00. The insurance company offered policies in which the insured was required to pay only $2.00 for every prescription drug obtained from a participating pharmacy, with the remainder of the cost being paid by the insurer. The Court determined that the pharmacy agreements served only to minimize the cost the insurer incurred in fulfilling its underwriting obligations. *Id.* at 213, 99 S.Ct. at 1074. The benefit promised to policyholders, however, was not affected. So long as the insured paid only $2.00 for each prescription, "policyholders are basically unconcerned with arrangements made between Blue Shield and participating pharmacies." *Id.* at 214, 99 S.Ct. at 1075. The Court determined that the agreements did not affect the risk that the insured may suffer a financial loss arising from the purchase of prescription drugs, nor did it affect the relationship between the insured and the insurer. *See Id.* at 213–214, 216–217, 99 S.Ct. at 1074–1075, 1076. As such, the court found that the agreements were not the business of insurance.

As plaintiffs argue in the instant case, under the terms of their insurance policies, the provider's discount agreements must be taken into account in calculating the policyholder's copayments. This directly affects the amount of the copayment, and, as such, the policyholder's risk of suffering financial loss.

Furthermore, the activity complained involves drafting insurance policies and the performance of the insurance contract. The Supreme Court stated:

We do not read [*Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982) ] to suggest that the

business of insurance is confined entirely to the writing of insurance contracts, as opposed to their performance ... There can be no doubt that the actual performance of an insurance contract falls within the "business of insurance," as we understood that phrase in *Pireno* and *Royal Drug*. To hold otherwise would be mere formalism. Moreover, performance of an insurance contract also satisfies the remaining prongs of the *Pireno* test: it is central to the policy relationship between insurer and insured and is confined entirely to entities within the insurance industry.

*United States v. Fabe,* — U.S. —, —, 113 S.Ct. 2202, 2209, 124 L.Ed.2d 449 (1993). Accordingly, I find BCBSO's alleged activities satisfy the second prong of the *Cochran* test as it falls within the "business of insurance." *See Forsyth v. Humana, Inc.,* 827 F.Supp. 1498, 1520–1521. *But see, Thacker v. New York Life Ins. Co.,* 796 F.Supp. 1338 (E.D.Cal.1992) (to the extent plaintiff alleges mail fraud activity is not the business of insurance).

The third prong requires the court to determine whether Ohio has enacted laws for the purpose of regulating the activity of which plaintiffs complain. Ohio has enacted laws for the purpose of regulating unfair and deceptive acts of insurance companies. *See* Ohio Rev. Code § 3901.19–26. The Ohio legislature has conferred upon the Ohio Department of Insurance and the Superintendent of Insurance broad powers in regulating insurance trade practices. *See Id.* at § 3901.01; *see also Strack v. Westfield Companies,* 33 Ohio App.3d 336, 338, 515 N.E.2d 1005 (Summit Cty. 1986). Specifically, § 3901.21(A) proscribes any statements "misrepresenting the terms of any policy ... or the benefits or advantages promised thereby...." As defendants argue, the crux of plaintiff's RICO claim is that BCBSO misrepresented plaintiffs' benefits. Furthermore, the Ohio legislature has provided that those violating § 3901.21 are subject to enforcement by the Superintendent. Ohio Rev. Code § 3901.22. These statutes clearly demonstrate the state's effort to regulate the conduct com-plained of in this case. Accordingly, the third prong of *Cochran* is satisfied.

Finally, I must determine whether the RICO statute would invalidate, impair, or supersede the state law. The Ohio legislature has chosen to have Ohio insurance regulatory law enforced solely by the Superintendent of Insurance. There is no private cause of action under § 3901.21. *Strack v. Westfield Companies,* 33 Ohio App.3d 336, 338, 515 N.E.2d 1005 (Summit County 1986). Thus, application of RICO would impair the enforcement of Ohio insurance law.

Plaintiffs argue, however, that because private actions for common law fraud exist in addition to actions under § 3901.21, a fraud-based RICO claim does not impair Ohio law.[4] However, common law fraud actions "do not reward plaintiffs with the treble damages, costs, and attorney fees mandated by RICO." *Wexco, Inc. v. IMC, Inc.,* 820 F.Supp. 194, 204 (M.D.Pa.1993); *Forsyth,* 827 F.Supp. at 1521; *see also LeDuc v. Kentucky Central Life Ins. Co.,* 814 F.Supp. 820, 829 (N.D.Cal. 1992). As the *Wexco* court explained:

> The availability of a federal private action under RICO would not merely nullify the state's chosen regulatory remedies for insurance entity misconduct. Rather, this court believes that the availability of a federal private remedy which would reward successful business plaintiffs, ... with treble damages, costs and attorney fees cannot help but upset the balance of relationships between insurance entities and insureds which are established and regulated by ... state laws.

*Wexco,* 820 F.Supp. at 204; *see also Strack,* 33 Ohio App.3d at 338, 515 N.E.2d 1005 (the current method of enforcing [§ 3901.21] prohibitions was, undoubtedly, to implement a legislative balance between consumer rights and legitimate business interests).

For the reasons stated above, the fourth prong of the *Cochran* test is also satisfied. Consequently, the Court finds that the

---

**4.** Plaintiffs cite *Thacker v. New York Life Ins. Co.,* 796 F.Supp. 1338, 1343 (E.D.Ca.1992) in sup-port of this argument.

McCarran–Ferguson Act precludes application of RICO in the present case.[5]

Plaintiffs and defendant have had more than ample opportunity to present their arguments regarding defendant's motion to dismiss. As such, defendant's motion for oral argument on the motion to dismiss will be denied.

For the foregoing reasons, it is

ORDERED that defendant's motion to dismiss as to plaintiff Everson is granted, granted as to plaintiffs McConocha's and Engel's third cause of action, and denied as to plaintiffs McConocha's and Engel's first and second causes of action; and it is

FURTHER ORDERED that defendant's motion for oral argument on defendant's motion to dismiss be, and hereby is denied.

**5.** Because the Court has determined that the RICO claim must be dismissed on other grounds, the Court does not reach the constitutional issue raised by defendants.