**PROTOCARE OF METROPOLITAN N.Y., INC., Plaintiff,**

v.

**MUTUAL ASSOCIATION ADMINISTRATORS, INC. and Neighborhood Cleaners Association Employees Benefit Plan, Defendants.**

No. 93 Civ. 8871 (MBM).

United States District Court, S.D. New York.

Oct. 18, 1994.

Abraham Wax, New York City, for plaintiff.

Allen B. Breslow, Jonathan D. Farrell, Steven Neuwirth, Frank & Breslow, Melville, NY, for defendants.

## OPINION and ORDER

MUKASEY, District Judge.

Plaintiff Protocare of Metropolitan N.Y., Inc. has brought this action against Mutual Association Administrators, Inc. and Neighborhood Cleaners Association Employees Benefit Plan alleging breach of contract and violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132. Defendants have moved to dismiss both claims, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Matters outside the pleadings having been pre-

sented to the court, Fed.R.Civ.P. 12(c) authorizes conversion of defendants' motion to dismiss into a motion for summary judgment pursuant to Fed.R.Civ.P. 56(c). For the reasons set forth below, defendants' motion is granted as to the alleged breach of contract and denied as to the alleged violation of ERISA.

## I.

On August 21, 1992, Chae Chun Im, a Korean immigrant, signed an application for participation and membership in the Neighborhood Cleaners Association Employees Benefit Plan ("NCA Plan" or "Plan"). The NCA Plan is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1). Defendant Mutual is a third-party claims administrator of the NCA Plan, 29 U.S.C. § 1002(16)(A), possesses no assets of the Plan, and lacks authorization to make final determinations on who is eligible for benefits under the Plan. (Jarmolowsky Aff. ¶ 13) On his application form, Im responded "no" to the following questions: "in the past 2 years, has any named person consulted a physician/practitioner; in the past 2 years, has any named person taken prescribed medication; has any named person ever had ... cancer?" (Jarmolowsky Aff. Exh. 1)

Less than one week before filling out the application, however, Im had consulted a physician who had prescribed medication. The treating physician's impression was that Im "has an infiltrating type of adenocarcinoma [cancer] of the stomach." (Jarmolowsky Aff. Exh. 4). The application form states, above the signature line, that "the giving of false information on this application shall result in cancellation and revocation of membership in and benefits from the Trust." (*Id.*)

In March 1993, Im sought medical treatment for his stomach cancer from plaintiff Protocare, a third-party medical service provider. Defendant Mutual allegedly informed defendant that Im was covered by the Plan. Im then allegedly assigned to Protocare his insurance benefits, and also executed a security agreement. Relying on this information, plaintiff treated Im for stomach cancer, and

sent invoices for the treatment, along with the assignment of benefits, to Mutual.

On April 22, 1993, Mutual informed Im that he would be denied all benefits from the Plan because he had failed to disclose his previous medical history in the application form, and because "at least part of your treatment was for a preexisting condition." (Jarmolowsky Aff. Exh. 5) Mutual sent Im a check for the full amount he had contributed to the Plan, cancelled his policy, and refused to pay plaintiff's submitted bills, which totalled $42,326.68. (Jarmolowsky Aff. ¶ 5) Plaintiff alleges that Mutual did not explain its cancellation of Im's policy until long after Im died of cancer. (Pl. Memo. at 3)

Plaintiff's attorney wrote to Mutual on two occasions, stating that as Im's assignee it had standing to enforce the Plan provisions, and requesting an appeal of Mutual's rescission of Im's policy, a copy of the NCA Plan and other related information. In response, Mutual explained that Im's policy had been revoked because he "gave false medical information on his application" (Jarmolowsky Aff. Exh. 6), and that Im, the only potential plaintiff with standing, had never submitted an appeal (*Id.*).

Protocare initially brought this action in New York State Supreme Court, New York County, against the NCA Plan and Mutual for failure to pay Im's benefits and for failure to provide plan documents and information. (Def. Memo. at 3) Defendants then removed the case to this court, invoking the court's original jurisdiction over ERISA claims.

## II.

Plaintiff's first claim, alleging breach of contract, is preempted by ERISA. ERISA's preemption provisions are "deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. v. Dedeaux,* 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (quotation omitted). Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The phrase "relate to" has " 'its broad common-sense meaning, such that a state law relates to a benefit plan in its

normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Pilot Life,* 481 U.S. at 47, 107 S.Ct. at 1553 (quotations omitted). The preemption clause is not limited to "'state laws specifically designed to affect employee benefit plans,'" *id.* at 47–48, 107 S.Ct. at 1553 (quotation omitted); rather, it preempts state statutes of general application and state common-law causes of action. *See id.; see also Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138–40, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990) (same); *NYSA–ILA Med. & Clinical Serv. Fund,* 27 F.3d 823, 826 (2d Cir.1994) ("even where a state law has no express link to an employee benefit plan, it can be preempted 'insofar as the law applies to benefit plans in particular cases'") (quotation omitted); *Snyder v. Elliot W. Dann Co.,* 854 F.Supp. 264, 273 (S.D.N.Y.1994) ("As a matter of law all state common law claims of promissory estoppel, breach of contract or fraud are preempted by ERISA"). Plaintiff argues that state insurance laws are not preempted by ERISA. The Supreme Court has concluded otherwise: "State laws that directly regulate insurance ... do not reach self-funded employee benefit plans." *FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990). Because the NCA Plan is self-funded, New York's insurance laws do not apply.

■ Even if plaintiff's contract claims were not preempted by ERISA, the clear provisions of the NCA Plan would warrant summary judgment. The Plan's documents and its Summary Plan Description ("SPD") "govern an employer's obligations under ERISA plans." *Synder,* 854 F.Supp. at 271 (quoting *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir.1988)). As explained to Im on April 22, 1993, and as stated explicitly in the SPD, failure to disclose "full and accurate" medical history results in the denial of plan benefits. (Jarmolowsky Aff. Exh. 5; SPD at 53). Further, the SPD explains that "no benefits will be provided" for preexisting conditions. (SPD at 35; Jarmolowsky Aff. Exh. 5)

Plaintiff does not deny that Im failed to report accurately his medical history, nor does plaintiff deny that Im's treatment was for a preexisting condition. All that plaintiff can offer to refute the facial violation of the Plan is to allege Im's limited knowledge of English, and the possibility that he was not informed of the initial diagnoses. Even if this latter claim were true, however, plaintiff cannot deny that Im failed to report on his Plan application that he had seen a physician just one day earlier, and that he had received prescribed medication, failure to disclose both of which constitute violations of the NCA Plan. Thus, even when all evidence is examined in the light most favorable to plaintiff, as it must be on a motion for summary judgment, there are no material issues of fact in dispute that warrant a trial on plaintiff's first claim. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). Plaintiff's first claim is therefore dismissed pursuant to Fed.R.Civ.P. 56(c).

### III.

■ Under § 502(a) of ERISA, three classes of persons have standing to bring a civil action under ERISA: a participant or beneficiary, the Secretary of Labor, and a fiduciary. 29 U.S.C. § 1132(a). Participants and beneficiaries have rights under § 502(c) of ERISA to demand that a plan administrator provide them with requested information. 29 U.S.C. § 1132(c). The Second Circuit has interpreted this list to be exclusive, unless some indication of legislative intent can be found to "grant additional parties standing." *Chemung Canal Trust Co. v. Fairway Spring Co.,* 939 F.2d 12, 14 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3014, 120 L.Ed.2d 887 (1992). No such legislative intent, however, has been discovered. *See id.* (no legislative intent to "grant a former fiduciary a continuing right to sue"); *Pressroom Unions v. Continental,* 700 F.2d 889, 892 (2d Cir.) (no legislative intent to extend standing for "other parties not listed"), *cert. dismissed,* 463 U.S. 1233, 104 S.Ct. 26, 77 L.Ed.2d 1449 (1983).

Plaintiff argues that when Im allegedly assigned his rights it became a beneficiary of the Plan. ERISA defines a beneficiary as a

"person designated by a participant, or by the terms of an.employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Thus, for plaintiff to become a beneficiary and therefore have standing, Im's assignment must have been valid.

The SPD states that it is a reimbursement plan and that "[n]o participant or dependent entitled to any benefits under this Plan has the right to assign ... in any manner his/her legal or beneficial interest in the benefits or assets of this Plan." (Jarmolowsky Aff. Exh. 7 at 3) However, just one sentence later, the SPD explains that the Plan allows for "direct payment of benefits to a health care provider." (*Id.*) Such payments are "solely for the convenience of the participant and are discretionary on the part of the Plan (legal liability ... remains with the participant or the patient and is not assumed by the Plan)." (*Id.*)

The Second Circuit has not ruled either on whether ERISA permits assignments, or on the effect of an anti-assignment clause in an ERISA medical plan. Defendant argues that the Third Circuit's conclusion that assignees lack standing should be followed. *Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local No. 229 Welfare Fund,* 764 F.2d 147, 154 n. 6 (3rd Cir.1985). The Third Circuit's statements on standing, however, are dicta, and tentative dicta at that. *See id.* ("even if Mrs. Fazio had actually assigned her claim to the ILGWU Fund, we have serious doubts whether she could assign along with her substantive rights her right to sue in federal court"); *see also United States v. Oshatz,* 912 F.2d 534, 540 (2d Cir.1990) ("If every phrase in an opinion were accorded binding effect, there would be a tendency either to refine language with such meticulous care as to imperil the prompt disposition of the Court's work or to reduce opinions to bare pronouncements of holdings"), *cert. denied,* 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991). Moreover, the Court left unexplained the source of its "serious doubts" that, as the concurring judge argued, it is possible to assign standing under ERISA.

I find the Fifth, Seventh, and Ninth Circuits' views on assignability and standing more convincing. *See Hermann Hospital v. MEBA Medical and Benefits Plan,* 845 F.2d 1286 (5th Cir.1988) ("Hermann I"); *Hermann Hospital v. MEBA Medical and Benefits Plan,* 959 F.2d 569 (5th Cir.1992) ("Hermann II"); *Kennedy v. Connecticut Gen. Life Ins.,* 924 F.2d 698, 700–01 (7th Cir.1991); *Misic v. Building Service Employees Health & Welfare Trust,* 789 F.2d 1374, 1377–78 (9th Cir.1986) (assignees stand in shoes of beneficiaries). In *Hermann I* the Fifth Circuit held that ERISA "allows the assignment of health care benefits" but failed to address the issue of whether the specific plan under consideration permitted assignments. 845 F.2d at 1289. After remanding the case to determine whether the hospital was an assignee, the Court in *Hermann II* held that the defendant was estopped to raise as a defense the plan's anti-assignment clause because of its three-year delay in raising the issue. 959 F.2d at 574. The Court then interpreted the anti-assignment clause, which was similar to the language employed in NCA's anti-assignment clause, as "applying only to unrelated, third-party assignees—other than the health care provider of assigned benefits." *Id.* at 575. To conclude otherwise, the Court reasoned, would force health care providers to wait until the patient sued the plan and then bring suit against the patient. Because the patient, knowing that any recovery would only be passed on to the health care provider, would lack incentive to bring suit, the "result would be inequitable." *Id.*

In *Kennedy,* the Seventh Circuit held that subject-matter jurisdiction "depends on an arguable claim, not on success." 924 F.2d at 700–01. Only if the terms of a plan are so unambiguous that "any claim as an assignee must be frivolous is jurisdiction lacking." *Id.* The possibility that the health care provider could receive direct payment from the insurance company was sufficient to "establish subject-matter jurisdiction." *Id.*

Like the policy in *Kennedy,* the NCA Plan language is "not so clear" as to make frivolous Protocare's claim of being an assignee. Although the Plan does contain an anti-assignment provision, it also provides for the possibility of direct payment to the health

care provider. (Jarmolowsky Aff. Exh. 7) If the Plan had intended to prevent all assignments, as defendants claim, then it would not have preserved the discretion to pay Protocare directly. To bar assignments completely, especially in a reimbursement plan, would prevent plan members with limited finances from receiving medical care. Further, to deny standing to health care providers would "discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them 'up-front.'" *Hermann I*, 845 F.2d at 1290 n. 13. Such a result would violate the purpose and spirit of an ERISA medical plan. Therefore, Protocare has standing to bring suit as a "beneficiary" under 29 U.S.C. § 1002(8).

As Im's assignee, however, Protocare stands in the shoes of the assignor, and his rights are therefore no greater than Im's. *Misic*, 789 F.2d at 1378. Because Im cannot recover for the alleged breach of contract, *see supra*, Protocare's efforts to recover for the same alleged violations in its second claim must also fail.

■ The only remaining issue under plaintiff's second claim therefore is whether defendants violated § 502(c) of ERISA. 29 U.S.C. § 1132(c). Defendant Mutual claims that it cannot be sued as a fiduciary of the Plan because Mutual does not "possess any responsibility or authority to make *final* determinations as to eligibility for claims" and because its functions "are purely ministerial; it neither shares risk nor is it an insurer." (Def. Memo. at 9) (emphasis in original) Defendant is correct in this assertion. Under ERISA:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). A person who has no power to make any decisions on plan policy, interpretations, procedures or practices, but who applies the rules "determining eligibility for participation or benefits" in the plan is not a fiduciary. 29 C.F.R. § 2509.75–8(D–2) (1991); *see also NGS American, Inc. v. Barnes*, 805 F.Supp. 462, 464–65 (W.D.Tx. 1992), *aff'd*, 998 F.2d 296 (5th Cir.1993). Under the NCA Plan, Mutual makes the initial determination of whether a submitted claim should be recognized. (SPD at 42–43) In carrying out this task, Mutual simply applies the Plan rules. Final determination of whether a denial of benefits was proper rests with the Board of Trustees, not with Mutual. (*Id.* at 44) Mutual, as the NCA Plan administrator, therefore is not a fiduciary as defined in ERISA, and may not be sued as such.

■ Plaintiff, however, at least in its second claim, is suing Mutual not as a fiduciary but as the NCA Plan administrator. Plaintiff, as an assignee, *see supra*, has standing to sue Mutual under § 502(c) of ERISA, which provides:

> Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable ... in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c). Because Mutual has refused to comply with Protocare's request for information concerning its cancellation of Im's policy, Protocare's suit is properly brought. Defendants' motion for summary judgment on plaintiff's second claim therefore is denied.

■ The statute gives the court discretion as to the amount of the penalty, if any, to be imposed on a derelict administrator. Prejudice to plaintiff caused by an administrator's failure to supply it with information is a significant factor for a court to consider. *Kascewicz v. Citibank, N.A.*, 837 F.Supp.

1312, 1322 (S.D.N.Y.1993). Another factor is the administrator's conduct, and his reasons for failing to supply the requested information. *Id.* It cannot be said that Mutual acted in bad faith when it refused to comply with Protocare's requests. Mutual had supplied Im with the reasons for its cancellation of his policy, and Im himself never sought administrative review of that decision. Further, Mutual had good reason to believe that as an alleged assignee, Protocare had no right under ERISA to receive plan documents. The case law interpreting the rights of assignees is far from clear, and this Circuit has yet to rule on this issue. In such circumstances, it would be inappropriate to reward Protocare with penalties, especially since the "statutory penalty provision 'is in the nature of punitive damages designed more to punish the intransigent administrator and to teach ERISA fiduciaries a needed lesson than to compensate the [plan participant] for actual loss.'" *Id.* (quoting *Sandlin v. Iron Workers Dist. Council Pension Plan,* 716 F.Supp. 571, 574 (N.D.Ala.1988), *aff'd,* 884 F.2d 585 (11th Cir.1989).

In sum, defendants' motion is granted as to plaintiff's allegations of breach of contract in its first and second claims, and denied as to the alleged violation of § 502(c) of ERISA. For the reasons set forth above, however, plaintiff is denied any award of penalties under ERISA. 29 U.S.C. § 1132(c). Settled judgment on ten (10) days' notice.

SO ORDERED.