**UNIVERSITY OF TENNESSEE WILLIAM F. BOWLD HOSPITAL, as Assignee of Floyd Laster, Jr., Plaintiff,**

**v.**

**WAL–MART STORES, INC., a Delaware Corporation, Wal–Mart Associates' Group Health Plan, and the Administrative Committee of the Wal–Mart Associates' Group Health Plan, Defendants.**

No. 95–2648–D/V.

United States District Court,
W.D. Tennessee,
Western Division.

Dec. 16, 1996.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DONALD, District Judge.

This matter is before the Court upon the motion of Wal–Mart Stores, Inc., a Delaware Corporation, Wal–Mart Associates' Group Health Plan, and The Administrative Committee of Wal–Mart Associates' Group Health Plan (collectively, "Defendants") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FED.R.CIV.P.").

Opposing the motion is The University of Tennessee William F. Bowld Hospital ("Plaintiff" or "UT Bowld"), a state owned and operated hospital located in Memphis, Tennessee. Defendants, respectively, are Wal–Mart Stores, Inc., a Delaware Corporation ("Plan Sponsor"), Wal–Mart Associates' Group Health Plan ("Plan"), and The Administrative Committee of Wal–Mart Associates' Group Health Plan ("Plan Administrator").

Plaintiff brought the underlying suit in this district against Defendants under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, as amended (1974), as Assignee of Floyd Laster, Jr. ("Participant"), on three counts:

Count I: Pursuant to 29 U.S.C. § 1132(a)(1)(B), for failure to pay benefits for medical bills incurred by the Participant during hospitalization at Plaintiff's hospital;

Count II: Pursuant to 29 U.S.C. § 1021(a)(1), for failure to furnish a summary plan description; and,

Count III: Pursuant to 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503–1(f), for failure to furnish a written denial when a claim for benefits has been denied.

In support of their motion for summary judgment, Defendants posit that the Plaintiff lacks legal standing to sue on any of the enumerated counts because the Plan expressly prohibits the assignment of benefits and Plaintiff's only asserted standing is as Assignee of the Participant.[1] Defendants further posit that, if the Court were to find a valid assignment extant, then Defendants would still be entitled to summary judgment on the second and third counts because Defendants' alleged failure to furnish Plaintiff with the summary plan description and with a written denial, upon request, was not deliberate, and because Plaintiff suffered neither harm nor prejudice on account of Defendants' alleged failure. *See* Memorandum of Law Supporting Defendants' Motion for Summary Judgment, Docket No. 8, Page 11. To the extent that the motion for summary judgment relates to Defendants' subjective intent, questions of fact or mixed questions of law and fact predominate. The Court may grant summary judgment only where the material facts involved in the matter are undisputed and questions of law predominate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where questions of fact or mixed questions of law and fact predomi-

---

1. In the alternative to their motion for summary judgment, Defendants contest that "Plaintiff's claim for recovery of statutory penalties under 29 U.S.C. Section 1132(c) fail (sic) to state a claim for relief because neither Defendant is statutory (sic) liable for such claims." Motion Of Defendants Wal–Mart Stores, Inc., And Wal–Mart Associates' Group Health Plan For Summary Judgment, Docket No. 7, Page 2. Subsequent to the filing of the motion for summary judgment, the Plaintiff was granted leave to amend its complaint. The amended complaint, which supersedes the original complaint, added as a party defendant the Plan Administrator. Section 1132(c) of Title 29 of the United States Code provides that the "administrator", as that term is defined in 29 U.S.C. § 1002(16)(A)(i), who fails to divulge information to a participant or beneficiary, as those terms are defined under 29 U.S.C. § 1002(7) and (8) respectively, required under Subchapter I of ERISA, may be personally liable in an amount up to $100.00 per day of violation. The Plan and the Plan Sponsor may also be sued for violations of Subchapter I of ERISA. 29 U.S.C. §§ 1132(d)(1) and 1002(16)(A)(ii), respectively. The recipient of a valid assignment may assert a claim as a beneficiary of an ERISA-regulated plan. *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1277 (6th Cir.1991). For the foregoing reasons, the Court denies the alternative motion of Defendants under FED. R.CIV.P. 12(b)(6).

nate, the Court must deny summary judgment. *Id.*

Jurisdiction in this Court is found in 29 U.S.C. § 1132(e) and (f). Regarding the assignability of welfare benefits under an ERISA-regulated insurance plan containing an anti-assignment provision, this appears to be a case of first impression in the Sixth Circuit. Neither the parties nor the Court has discovered controlling precedent. The issue has been extensively briefed by both parties. The Court has thoroughly examined the record in this case and has conducted an exhaustive review of applicable case law. For the following reasons, the Court hereby **DENIES** Defendants' Motion for Summary Judgment in all aspects.

### FACTS

At all times relevant to this cause, Floyd Laster, Jr., was an employee of Wal-Mart Stores, Inc., and a participant in the Plan, a self-insured "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. § 1002(1). Plaintiff UT Bowld is a state owned and operated hospital located in Memphis, Tennessee. On April 20, 1992, Laster was admitted to UT Bowld for treatment of a possible renal stone. On the same day the Participant executed a document purporting to assign and transfer his rights in and to any medical benefits payable to him under the Plan.[2] From April 20, 1992, until his death on September 25, 1992, Plaintiff provided medical care to the Participant. Plaintiff, in its alleged capacity as Assignee of the Participant, has submitted to Defendants claims for medical services in the amount of $191,190.45.

On December 1, 1993, Plaintiff requested a copy of the summary plan description (SPD) *via* certified mail, return receipt requested. Plaintiff's letter was directed to the "Wal-Mart Group Health Plan" at the address of the Plan Administrator in Bentonville, Arkansas. Defendants deny having possession of the December 1, 1993 letter. Subsequently in 1993, Plaintiff telephonically contacted Marc Weinberg, an employee of Defendants, for information regarding the purported denial of benefits. On February 1, 1994, Plaintiff sent another letter, certified mail, return receipt requested, to the same address, to the attention of Weinberg, enclosing therein certain forms requesting process of the Participant's benefit claim. In March of 1994, Plaintiff called Weinberg for an answer and sent Weinberg *via* facsimile the contents of the February 1, 1994 mailing. On March 31, 1994, Plaintiff again communicated telephonically with Weinberg about the claims. Finally, on April 12, 1994, Plaintiff, Weinberg and Weinberg's supervisor spoke about the status of the Participant's claims. Plaintiff received

2. University of Tennessee William F. Bowld Hospital Form Release of Information, Assignment of Benefits, and Acceptance of Financial Responsibility:

Authorization to release information and payment request: I certify that the information given by me in applying for payment under Titles XVIII and XIX of the Social Security Act is correct. I authorize release of all records required to act on this request. I request that payment of authorized benefits be made on my behalf to the Hospital. I understand that I am responsible for the difference between the charges for private room accommodations and the most prevalent charge for semi-private room accommodations if such accommodations are not medically necessary.

For and in consideration of medical services rendered by the Hospital to the patient named herein, I hereby assign and transfer to the hospital all of my rights in and to any medical benefits payable to me or to a beneficiary under the below listed policies but not to exceed the Hospital's regular charges for this period of hospitalization.

I further assign and transfer to the aforesaid assignees any rights for payment of medical benefits which I may have under any policy of insurance not referenced below which may be determined hereafter to pay benefits otherwise payable to me or to a beneficiary designated in the policy. By this assignment I authorize payment directly to the Hospital of all medical benefits payable under the aforesaid policies. I understand I am financially responsible and agree to pay, at the time of discharge, for any and all hospital charges not covered as a result of this assignment, and that if I fail to pay said charges when due I will pay to the University of Tennessee all reasonable expenses incurred by it in collecting said debt including attorney's fees in an amount not less than 33½% of the total amount due.

I further authorize the Hospital to release any information (including any treatment for alcohol or drug abuse) required in the processing of applications for financial coverages for services rendered during this admission.

neither the claimed welfare benefit, the written denial, nor the SPD.

Defendants have, in the past, paid benefits under the Plan directly to health care providers. Defendants are unable to show any instance, other than with this Plaintiff, where Defendants have refused direct payments to health care providers under the Plan's anti-assignment provision, when so directed in writing by a Plan participant.

## SUMMARY JUDGMENT STANDARD

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The Court may also consider any material that would be admissible or usable at trial, including exhibits that have been properly made a part of an affidavit. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2721, at 40, § 2722, at 56 (2d ed.1983).

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986). The burden on the party moving for summary judgment may be discharged by pointing out that there is an absence of evidence to support the nonmoving party's case." *Kauffman v. Allied Signal, Inc., Autolite Div.,* 970 F.2d 178, 182 (6th Cir.), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992) (the moving party need not support its motion with affidavits or other similar materials "negating" the opponent's claim) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Id.* The party opposing the motion must "do more than simply show that there is some meta-physical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In short, the nonmoving party may not oppose a properly supported motion for summary judgment by mere reliance on the pleadings. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. "[I]n the 'new era' of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson, Celotex* and *Matsushita,* trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence." *Cox v. Kentucky Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995). "If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion must be granted." *Id.*

## EMPLOYEE RETIREMENT INCOME SECURITY ACT

ERISA is a "comprehensive and reticulated statute," *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980), providing "a panoply of remedial devices," *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985), for participants and beneficiaries of benefit plans. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 108–109, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989).

■ The construction of an ERISA-regulated insurance contract is governed not by state insurance law rules but by principles of federal law. *Turner v. Safeco Life Ins. Co.,* 17 F.3d 141, 145 (6th Cir.1994) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987)). *See also Misic v. Building Serv. Employees Health and Welfare Trust,* 789 F.2d 1374, 1377 (9th Cir.1986) ("When federal law

preempts state law, federal common law, as well as federal statutory law, is substituted for the preempted state law.") (citing *Sola Elec. Co., v. Jefferson Elec. Co.,* 317 U.S. 173, 176, 63 S.Ct. 172, 173, 87 L.Ed. 165 (1942)).

The Supreme Court has prescribed that "courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone,* 489 U.S. at 110, 109 S.Ct. at 954, 103 L.Ed.2d 80 (quoting *Pilot Life,* 481 U.S. at 56, 107 S.Ct. at 1558, 95 L.Ed.2d 39); *see also Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 24, n. 26, 103 S.Ct. 2841, 2854, n. 26, 77 L.Ed.2d 420 (1983) ("a body of federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans").

■ ERISA-regulated plans have fiduciaries and are functionally trusts. *See Firestone,* 489 U.S. at 112, 109 S.Ct. at 955, 103 L.Ed.2d 80. "The terms of trusts created by written instruments are 'determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible.'" *Id.* (quoting RESTATEMENT (SECOND) OF TRUSTS § 4, Comment d (1959)). "[S]traightforward language in an ERISA-regulated insurance policy should be given its natural meaning." *Turner v. Safeco Life Ins. Co.,* 17 F.3d 141, 145 (6th Cir.1994) (quoting *Burnham v. Guardian Life Ins. Co.,* 873 F.2d 486, 489 (1st Cir.1989)).

## FAILURE TO FURNISH SUMMARY PLAN DESCRIPTION AND FAILURE TO ISSUE WRITTEN DENIAL

■ The Sixth Circuit recognizes the right of the health care provider to assert a claim as a "beneficiary," as that term is statutorily defined at 29 U.S.C. § 1002(8), if the health care provider holds a valid assignment of benefits under an ERISA-regulated health insurance plan. *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1277 (6th Cir.1991), *cert. denied,* 505 U.S. 1233, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992) ("A health care provider may assert an ERISA claim as a 'beneficiary' of an employee benefit plan if

it has received a valid assignment of benefits."). ERISA mandates that the plan administrator furnish to each participant and each beneficiary an SPD as defined by 29 U.S.C. § 1022(a)(1). 29 U.S.C. §§ 1021(a)(1), 1024(b)(1). By definition, an SPD does not reproduce every word of the plan. *Everson v. Blue Cross and Blue Shield of Ohio,* 898 F.Supp. 532, 536 (N.D.Ohio 1994). The plan and the SPD are two distinct documents. *Id.* The one plan document submitted to the Court by Defendants in support of their motion for summary judgment is ostensibly the Plan and not the SPD. *See* Aff. of Denise Morgan appended to Memorandum of Law Supporting Defendants' Motion for Summary Judgment (Docket No. 8). With undisputed evidence that Plaintiff made certain requests for plan information and no evidence in the record to indicate that Defendants ever complied with Plaintiff's requests for a copy of the SPD and a written denial, the issue would turn on the Court's determination of whether the purported assignment of benefits by Participant to Plaintiff was a valid assignment. If the Court were to find the assignment valid, then Defendants assert that summary judgment should still be granted because it is not clear that an assignee of a plan participant is entitled to receive plan information from the administrator.

## ASSIGNMENT OF BENEFITS

■ ERISA statutorily prohibits the assignment or alienation of pension benefits, 29 U.S.C. § 1056(d), but makes no express provision for or against the assignment of welfare benefits. 29 U.S.C. §§ 1001, *et seq.* The Court is left, then, to determine the issue under the body of federal common law promulgated pursuant to *Firestone,* 489 U.S. at 110, 109 S.Ct. at 954, 103 L.Ed.2d 80.

Federal law gives "no right to torture language in an attempt to force particular results or to convey delitescent nuances the contracting parties neither intended nor imagined." *Turner v. Safeco Life Ins. Co.,* 17 F.3d 141, 145 (6th Cir.1994) (quoting *Burnham v. Guardian Life Ins. Co.,* 873 F.2d 486, 489 (1st Cir.1989)); *accord Davidowitz v. Delta Dental Plan of California, Inc.,* 946 F.2d 1476, 1478 (9th Cir.1991) ("As

a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions.") (citing RESTATEMENT (SECOND) OF CONTRACTS § 322, Comment a (1981)); *Kennedy v. Connecticut Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir.1991) ("Because ERISA instructs courts to enforce strictly the terms of plans, an assignee cannot collect unless he establishes that the assignment comports with the plan.") (internal citations omitted).

The Court analyzes the plain language of the Plan to determine whether the purported assignment of the Participant's benefits to Plaintiff comports with the terms of the Plan. *Kennedy*, 924 F.2d at 700. Under the Plan, the anti-assignment clause appears clear and straightforward:

> Benefits payable hereunder may not be assigned, transferred, or in any way made over to another party by a PARTICIPANT. Nothing herein shall be construed to make the PLAN liable to any third party to whom a PARTICIPANT may be liable for medical care, treatment, or services. Wal–Mart Associates' Health Plan Document (January 1, 1992), Section VIII, General Provisions, Assignment, Page 49.

In the following paragraph of the Plan, though, the language clearly reflects the direct-payment option, which Plaintiff asserts is an exception to the prior anti-assignment clause:

> However, if so authorized in writing by the ASSOCIATE, the ADMINISTRATOR may pay a benefit directly to a provider of medical service instead of to the ASSOCIATE, as a convenience to the ASSOCIATE, in which event all the COMPANY'S or PLAN'S obligations to the ELIGIBLE ASSOCIATE or ELIGIBLE DEPENDENT with respect to such benefit shall be discharged by such payment. Wal–Mart Associates' Health Plan Document (January 1, 1992), Section VIII, General Provisions, Assignment, Page 49.

The Court notes that both excerpted paragraphs occur beside the title "Assignment" in the Plan and in consecutive order as demonstrated *supra*, and that no other portion of the Plan directly addresses assignment or transfer of benefits under the Plan.

In a subjacent paragraph ("Right to Audit"), however, the Plan "reserves the right to withhold payment to a provider of services and to conduct an audit of the provider's charges at any time these charges appear [to be excessive]." Wal–Mart Associates' Health Plan Document (January 1, 1992), Section VIII, General Provisions, Assignment, Page 50. The paragraph following ("Right to Recover Overpayments") also contemplates direct payment of benefits to health care providers. Wal–Mart Associates' Health Plan Document (January 1, 1992), Section VIII, General Provisions, Assignment, Page 50.

This case bears some resemblance to *Protocare of Metropolitan, N.Y., Inc. v. Mutual Ass'n Admins., Inc.*, 866 F.Supp. 757 (S.D.N.Y.1994), where there was a similar contradiction in Plan provisions concerning assignments. In *Protocare*, a Korean immigrant assigned ERISA benefits to a hospital prior to treatment for stomach cancer. The hospital attempted to collect from the plan's administrator but was told that the policy had been revoked because the participant failed to disclose prior medical history and that the treatment given the participant was for a preexisting condition not covered by the plan. The defendants also contested the hospital's standing to assert the rights of the participant under an assignment (i.e., the standing of the plaintiff to assert a claim as a beneficiary) where the plan expressly disallowed assignment but reserved discretion to pay providers directly. In *Protocare*, the court reasoned:

> Although the Plan does contain an anti-assignment provision, it also provides for the possibility of direct payment to the health care provider. If the Plan had intended to prevent all assignments, as defendants claim, then it would not have preserved the discretion to pay [the provider] directly. To bar assignments completely, especially in a reimbursement plan, would prevent plan members with limited finances from receiving medical care. Further, to deny standing to health care providers would discourage providers from becoming assignees and possibly from helping beneficiaries who were un-

able to pay them up-front. Such a result would violate the purpose and spirit of an ERISA medical plan.

*Id.* at 761–62 (internal quotations and citations omitted); *accord Hermann Hosp. v. MEBA Med. and Benefits Plan,* 959 F.2d 569, 575 (5th Cir.1992) *(Hermann II )* ("The anti-assignment clause should not be applicable, however, to an assignee who, as here, is the provider of the very services which the plan is maintained to furnish."). The court in *Protocare* found the assignment valid and accorded the hospital standing as assignee. 866 F.Supp. at 762. Because the hospital stood "in the shoes of the assignor," and because the court agreed that the assignor's condition was preexisting at the time of treatment, the hospital was denied recovery of benefits. *Id.* However, the hospital did defeat a summary judgment motion on the issue of damages pursuant to § 502 of ERISA, 29 U.S.C. § 1132(c), for refusal to comply with requests for information. *Id.*

Also cited by Plaintiff is *Misic v. Building Serv. Employees Health and Welfare Trust,* 789 F.2d 1374, 1377 (9th Cir.1986). In *Misic,* the plaintiff was a dentist who received assignments of medical benefits from plan participants and sued the plan derivatively, as assignee of the beneficiaries. Although it involved no contest of an anti-assignment provision in the actual plan, *Misic* is widely cited for the proposition that the assignment of benefits to health care providers is in furtherance of one of the central goals of ERISA [3]:

> Assignment of trust monies to health care providers results in precisely the benefit the trust is designed to provide and the statute is designed to protect. Such assignments also protect beneficiaries by making it unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment, and by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan.

*Id.; accord Hermann Hosp. v. MEBA Med. and Benefits Plan,* 845 F.2d 1286, 1289 (5th Cir.1988) *(Hermann I)* ("An assignment to a health care provider facilitates rather than hampers the employee's receipt of health benefits.").

Contrary reasoning comes from a District of Columbia test case with issues of law similar to the issues *sub judice, Washington Hosp. Ctr. Corp. v. Group Hospitalization and Med. Servs., Inc.,* 758 F.Supp. 750 (D.D.C.1991). In *Washington Hospital,* the plaintiff brought suit against an ERISA-regulated insurer under a purported assignment of benefits, although the plan contained a provision prohibiting assignments. The plaintiff, however, was a hospital participating in a cost-containment program with the insurer, and could have brought suit under the program, instead of derivatively under the plan. In a motion for summary judgment, the court construed the plan's anti-assignment provision against the plaintiff and denied the plaintiff the right to recover as a beneficiary. The court explained:

> If a patient could obtain care from a non-participating hospital and assign it the patient's rights to be reimbursed under a group policy, in the teeth of an anti-assignment clause, this direct payment inducement to become a participating hospital would be weakened or eliminated. A hospital would have far less reason to participate [in a contractual arrangement between the hospital and the insurer governing payment for insureds' medical costs] if non-participating hospitals could garner the same advantages without subjecting themselves to the constraints. *Id.* at 754.

In the instant case, the Court notes that the anti-assignment provision in the Plan is claimed by Defendants to be an effective tool for the containment of medical costs, however, not under the logic of *Washington Hospital, supra.* Defendants claim that the anti-assignment provision in the Plan contains costs by eliminating the potential that the

---

**3.** "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *Firestone,* 489 U.S. at 113, 109 S.Ct. at 956, 103 L.Ed.2d 80 (internal citations omitted).

Plan might inadvertently pay both the Participant and the Plaintiff. Defendants do not assert that the inclusion of the anti-assignment provision in the Plan was designed to promote a program whereby providers might participate in reducing costs and increasing the certainty and expediency of recompense and convenience to participants. *See id.* In the record there is no indication that the Defendants have contracted with any provider or group of providers to curtail costs or to effect some payment plan. Defendants' position would be strengthened by the existence of such a program; however, the Court does note the importance of *Washington Hospital* s reasoning purely as a part of the federal common law surrounding ERISA.

Defendants rely principally on a Ninth Circuit case from 1991, *Davidowitz v. Delta Dental Plan,* 946 F.2d 1476. In *Davidowitz,* the contested issue was whether ERISA prohibits welfare plan anti-assignment clauses. *Davidowitz,* 946 F.2d at 1478. Defendants' reliance on *Davidowitz* is inapposite. The court in *Davidowitz* found that beneficiaries did not have an absolute right to assign welfare benefits irrespective of contrary language in the plan. *Id.*

This Court is not asked to determine whether the health care provider has an absolute right to rely on a purported assignment of ERISA benefits in the face of an anti-assignment provision in the Plan, but rather, to determine whether, in light of the wording of the Plan provisions dealing with the disposition of benefits, this Plaintiff's claim as Assignee can survive a motion for summary judgment founded by Defendants on the Plan's anti-assignment provision. Defendants assert that under the body of federal common law promulgated pursuant to the Supreme Court's direction in *Firestone,* 489 U.S. at 110, 109 S.Ct. at 954, 103 L.Ed.2d 80, the Plan's anti-assignment provision disqualifies Plaintiff from asserting the rights of Participant. Plaintiff counters that applicable case law favors assignments to medical providers, and that ambiguities in the Plan relating to the payment of health care benefits should compel the Court to construe the anti-assignment language in the Plan as inoperative against a medical provider.

In the alternative, Plaintiff suggests that Defendants delay in asserting the Plan's anti-assignment provision as a basis for refusing to provide payment directly to Plaintiff should cause the Court to estop Defendants' assertion of this defense now. Plaintiff relies on *Hermann Hosp. v. MEBA Med. and Benefits Plan,* 959 F.2d 569, 575 (5th Cir.1992) (*Hermann II*), where the court held the defendant estopped to assert an anti-assignment clause because of its "protracted failure to assert the clause when [the provider] requested payment pursuant to a clear and unambiguous assignment of payments for covered benefits." *Id.* at 575.

## CONCLUSION

In the totality of the Court's analysis of the assignment issue, five factors are most pertinent:

(1) The disputed assignment from Laster to UT Bowld is clear and straightforward.

(2) The Plan's anti-assignment provision, when read in light of other provisions in the Plan allowing for direct payment to medical providers, is ambiguous.

(3) Assignment to medical providers furthers one of the central goals of ERISA (to promote the interests of employees and their beneficiaries in employee benefit plans) by facilitating rather than hampering the employee's receipt of health benefits, by making it unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment, and by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan.

(4) The central competing consideration, that of a direct payment inducement to become a participating hospital in a cost-containment program, is not present here.

(5) Defendants' failure to assert earlier its use of the Plan's anti-assignment provision as a basis for refusing the Plaintiff's claim, coupled with Defendants' practice of paying providers directly on prior purported assignments, has unnecessarily complicated this case.

Contrary to Defendants' assertions in the memorandum supporting their motion for summary judgment, it is not at all clear that the assignment upon which Plaintiff predicates its three counts was invalid due to the Plan's anti-assignment provision,[4] or did not convey any rights under the terms of the Plan because Defendants claim that the Participant was treated for a preexisting condition.[5] Conversely, it is very clear that, if Plaintiff does hold a valid assignment, then Plaintiff "stands in the shoes"[6] of the assignor, who was a participant in the Plan, and who inarguably had a right to all of the protections afforded participants and beneficiaries under 29 U.S.C. §§ 1132(a)(1)(B), 1021(a)(1), 29 U.S.C. § 1133, and under 29 C.F.R. § 2560.503–1(f). The parties have not resolved questions of fact surrounding the Defendants' intent or deliberateness in failing or refusing to comply with Plaintiff's requests for information. Mixed questions of law and fact still predominate. Defendants have failed to show entitlement to judgment as a matter of law, pursuant to FED.R.CIV.P. 56(c). For the foregoing reasons, the Court hereby DENIES Defendants' Motion for Summary Judgment.

---

**4.** *See* Memorandum of Law Supporting Defendants' Motion for Summary Judgment, Docket No. 8, Page 5.

**5.** *Supra* note 4.

**6.** *Protocare,* 866 F.Supp. at 762.